# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

The Use of a Cell-Site Simulator to Locate the Cellular Devices Assigned Call Numbers (414) 252-6700, (414) 554-1915, and (901) 562-2935

Case No. 19-M-150

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☐ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846, and Title 18, United States Code, Section 1951(a).

The application is based on these facts: See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Drug Enforcement Administration and U.S. Marshals Service.

☒ Delayed notice of _30_ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Philip T. Kovoor, Assistant United States Attorney
_Printed Name and Title_

Sworn to before me and signed in my presence:

Date: July 12, 2019

_____
Judge's signature

City and State: Milwaukee, Wisconsin    David E. Jones, U.S. Magistrate Judge
_Printed Name and Title_

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICES ASSIGNED CALL NUMBERS (414) 252-6700, (414) 554-1915, AND (901) 562-2935 | Case No. 19-M-150 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Todd Marratt, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the locations of the cellular devices assigned call numbers (414) 252-6700, (414) 554-1915, and (901) 562-2935 (the "Target Cellular Devices"), which are described in Attachment A.

2. I am employed as a Deputy with the U.S. Marshals Service and have held that position for over seven years. Prior to this position, I spent two years working for the U.S. Marshals Service in Albuquerque, New Mexico, as a Criminal Clerk. As part of my duties in my current position, I conduct investigations to locate federal and state fugitives.

3. In May 2012, I completed a 12-week training course at the Federal Law Enforcement Training Center located in Glynco, Georgia. In June 2012, I also completed the six-week Basic Deputy Course located at the U.S. Marshals Service Training Academy located in Glynco, Georgia. I have had both formal training and have participated in several

investigations that utilize various electronic surveillance techniques. These techniques have proven to be useful in locating individuals who are actively avoiding arrest.

4. I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had contact regarding this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. One purpose of applying for this warrant is to determine with precision the Target Cellular Devices's locations. However, there is reason to believe the Target Cellular Devices are currently located somewhere within this district because the users of those Target Cellular Devices are known to spend most of their time in this district, as corroborated by confidential sources and law enforcement surveillance, and two of the three Target Cellular Devices begin with the area code (414), which corresponds with this district. Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Devices outside the district provided the device is within the district when the warrant is issued.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that Calvin NASH, Montel IVORY, and Anthony MEEKS have violated the laws

of the United States as described below. All three were charged with these crimes on July 2, 2019 and are the subject of pending arrest warrants issued on July 3, 2019. There is also probable cause to believe that the Target Cellular Devices's locations will assist law enforcement in arresting NASH, IVORY, and MEEKS, who are each a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

8. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

9. In August 2017, case agents initiated an investigation into the Jimmy BATES Drug Trafficking Organization (DTO). The investigation to date has included traditional law enforcement methods, including but not limited to information from other law enforcement officers, documentary evidence, telephone toll data, cell site records, pen register and trap-and-trace devices, controlled buys of drugs and firearms, arrests of co-conspirators, confidential informants, execution of search warrants, public records, and physical surveillance.

10. As a result, case agents learned that Jimmy BATES obtains kilogram amounts of heroin and cocaine from several known and unknown sources of supply and is the leader of a large-scale heroin and cocaine distribution network operating in the Milwaukee metropolitan area. Case agents have identified the command and organizational structure of the BATES DTO.

11. On July 2, 2019, a federal grand jury issued a nine-count indictment against 15 members of the BATES DTO. The Grand Jury charged Calvin NASH, Montel IVORY, and

Anthony MEEKS (along with other members of the BATES DTO) with conspiracy to distribute more than 1 kilogram of heroin and more than 5 kilograms of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846. The Grand Jury also charged IVORY and MEEKS (along with other members of the BATES DTO) with conspiracy to interfere with commerce by robbery, in violation of Title 18, United States Code, Section 1951(a). That indictment remains sealed.

## CALVIN NASH - (414) 252-6700

12. On July 2, 2019, the Grand Jury charged Calvin NASH with conspiracy to distribute more than 1 kilogram of heroin and more than 5 kilograms of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846. An arrest warrant for NASH was issued on July 3, 2019.

13. On July 5, 2019, Deputy Brian Nodes of the U.S. Marshals Service received information from Special Agent Scott Marlow of the Drug Enforcement Administration that Calvin NASH is currently using the cellular telephone assigned call number (414) 252-6700.

14. In September 2018, case agents interviewed a confidential source (CS #4). CS #4 identified Calvin NASH as a heroin distributor in the Milwaukee area. CS #4 informed case agents that NASH utilizes the call number (414) 252-6700 to distribute heroin.

15. CS #4 conducted two successful controlled purchases of heroin from NASH using the call number (414) 252-6700 in October 2018. At the direction of case agents, CS #4 placed telephone calls to NASH at the call number (414) 252-6700 during

those controlled buys. The information provided by CS #4 was corroborated by the recordings of the controlled buy and the amount of heroin purchased from NASH.

16. During the second controlled purchase, NASH contacted CS #4 and claimed that CS #4 had shorted him $100. Detective Jasemin Pasho of the Milwaukee Police Department texted NASH at the call number (414) 252-6700 on behalf of CS #4 and arranged for CS #4 to provide NASH with another $100 of pre-recorded buy money.

17. For several reasons, case agents believe CS #4 is reliable and credible. First, CS #4 has been providing information since January 2018. Second, the information provided by CS #4 is consistent with evidence obtained elsewhere in this investigation, where CS #4 was not utilized and substantial parts of CS #4's information has been corroborated through independent investigation, including information from other sources and law enforcement reporting. CS #4 does not have a criminal history and is cooperating with case agents for consideration in a third party's pending state criminal charges. For these reasons, case agents believe CS #4 is reliable and credible.

18. In September 2018, November 2018, and January 2019, another confidential source (CS #3) also identified the call number (414) 252-6700 as NASH's phone number.

19. Case agents have utilized CS #3 to complete several controlled purchases of about 100 grams of heroin and a purchase of firearms and a ballistic vest directly from BATES between July 2018 and May 2019. A "controlled buy" is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When an informant is used, s/he is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and/or a monitoring device. When the transaction is completed,

the informant meets cases agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money and then interviewed by the case agents about the drug transaction. A sample of the suspected drugs is then field tested by the case agents for the presence of controlled substances and then placed in inventory pursuant to normal inventory procedures.

20. CS #3 has also recorded several covert videos at known drug houses in Milwaukee belonging to the BATES DTO showing members including NASH and MEEKS, manufacturing, packaging, or selling narcotics. In February 2019, CS #3 recorded a video showing NASH, along with Jimmy Bates, Wayne Potts, Jebar Cannon, Jason Ashley, and Anthony MEEKS at a stash house in Milwaukee, where members of the BATES DTO were sitting a table with a scale, packaged heroin, packaged cocaine, and a firearm. In March 2019, CS #3 recorded two videos showing NASH at a stash house in Milwaukee, where NASH inspected a large bag of cocaine provided by Bates in one and discussed the quality of heroin in another.

21. Case agents believe that CS #3 is reliable and credible. First, CS #3 has been continually providing information since February 2018. Second, the information provided by CS #3 is substantially against his/her penal interests. Third, the information provided by CS #3 is consistent with evidence obtained elsewhere in this investigation where CS #3 was not utilized, and substantial parts of CS #3's information have been corroborated through independent investigation, including information from other sources, law enforcement reporting, physical surveillance, and covert recordings. CS #3 is cooperating

for potential consideration on federal drug trafficking charges. CS #3 has a prior felony conviction for second-degree reckless homicide.

22. On July 5, 2019, a deputy marshal ran the telephone number (414) 252-6700 number through the Milwaukee County Inmate Phone System. On June 17, 2019, Jebar CANNON, also known as JABBER WALKER, a known member of the BATES DTO who is charged in the same conspiracy, contacted the call number (414) 252-6700. Special Agent Marlow listened to the jail call recording and identified the voice of the receiving party as that of Calvin NASH.

23. On July 8, 2019, the call number (414) 252-6700 was entered into ZetX, a law enforcement database. That search confirmed that the wireless telephone service provider for that call number is T-Mobile.

## MONTEL IVORY - (414) 554-1915

24. On July 2, 2019, the Grand Jury charged Montel IVORY with conspiracy to distribute more than 1 kilogram of heroin and more than 5 kilograms of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846, and conspiracy to interfere with commerce by robbery, in violation of Title 18, United States Code, Section 1951(a). An arrest warrant for IVORY was issued on July 3, 2019.

25. On July 5, 2019, a deputy marshal received information from Special Agent Marlow that IVORY is currently using the cellular telephone assigned call number (414) 554-1915.

26. CS #3 identified this phone number as belonging to IVORY in an interview in April 2019.

27. CS #3 has also previously provided information about observing IVORY in November 2018 and January 2019 obtaining controlled substances from Bates at a known stash house in Milwaukee belonging to the Bates DTO.

28. Case agents confirmed that the phone number (414) 554-1915 belonged to IVORY. As of July 2019, case agents obtained telephone toll records showing that the call number (414) 554-1915 is still communicating with other identified numbers associated with members of the BATES DTO.

29. On July 8, 2019, the call number (414) 554-1915 was entered into ZetX, a law enforcement database. That search confirmed that the wireless telephone service provider for that call number is Sprint.

### ANTHONY MEEKS - (901) 562-2935

30. On July 2, 2019, the Grand Jury charged Anthony MEEKS with conspiracy to distribute more than 1 kilogram of heroin and more than 5 kilograms of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846, and conspiracy to interfere with commerce by robbery, in violation of Title 18, United States Code, Section 1951(a). An arrest warrant for MEEKS was issued on July 3, 2019.

31. On July 5, 2019, a deputy marshal received information from Special Agent Marlow that Anthony MEEKS is currently using the cellular telephone assigned call number (901) 562-2935.

32. In April and May 2019, CS #3 recorded videos showing MEEKS at two known drug houses in Milwaukee belonging to the BATES DTO, while other members of the BATES DTO were packaging narcotics.

33. On May 19, 2019, officers of the Milwaukee Police Department responded to a 911 call at 5112 North 40th Street belongs to Takeya Warrens, one of BATES's girlfriends, to conduct a burglary investigation. Officers observed MEEKS standing near a pickup truck, while BATES was leaving the house. BATES matched the suspect's description and claimed that he stayed at that address. Officers searched MEEKS and found three bags of suspected crack cocaine—approximately 3 grams of crack cocaine in total along with a cellular telephone with the assigned call number (901) 562-2935. Officers went into the house and observed a black ballistic vest in plain view and obtained a search warrant for the house. Officers then found a FIE Guardian .25 caliber handgun bearing serial G703182 pistol under the mattress and a digital scale with residue. Bates had $7,340.25 on his person.

34. On July 5, 2019, case agents confirmed that the call number (901) 562-2935 belongs to MEEKS by listening to the jail calls of WAYNE POTTS, another member of the BATES DTO charged in the same indictment. Special Agent Marlow identified MEEKS's voice as the user of call number (901) 562-2935 by comparing MEEK's voice on the jail call(s) to that on other recordings of MEEKS.

35. On July 8, 2019, the call number (901) 562-2935 was entered into ZetX, a law enforcement database. That search confirmed that the wireless telephone service provider for that call number is AT&T Wireless (AT&T).

## MANNER OF EXECUTION

36. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a

cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

37. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Devices or receiving signals from nearby cellular devices, including the Target Cellular Devices. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Devices and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Devices and use that information to determine the Target Cellular Devices's locations, even if they are located inside a house, apartment, or other building.

38. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Devices, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Devices, and law enforcement will limit collection of information from devices other than the Target Cellular Devices. To the extent that any information from a cellular device other than the Target Cellular Devices is collected by the law enforcement device, law enforcement will delete that information, and

law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Devices from all other cellular devices.

39. In my experience, this information can assist law enforcement in identifying the location of a fugitive or a "person to be arrested." On July 10, 2019, the Court issued warrants to obtain historical cell site information (and other information) and prospective location information for the Target Cellular Devices. The historical cell-site information and prospective location information will enable law enforcement officers to more efficiently and precisely identify NASH, IVORY, and MEEKS's locations using the cell site simulator information. In turn, this information will aid law enforcement in apprehending NASH, IVORY, and MEEKS.

## AUTHORIZATION REQUEST

40. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

41. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Devices would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

42. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Devices outside of daytime hours.

43. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

*[signature]*

Todd Marratt
U.S. Deputy Marshal
U.S. Marshals Service

Subscribed and sworn to before me
On: July 12, 2019

*[signature]*

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the locations of the cellular devices assigned phone numbers (414) 252-6700, (414) 554-1915, and (901) 562-2935, whose wireless providers are T-Mobile, Sprint, and AT&T Wireless, respectively, and whose listed subscribers are unknown.

## ATTACHMENT B

Pursuant to an investigation of Calvin NASH, Montel IVORY, and Anthony Meeks, for violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846, and Title 18, United States Code, Section 1951(a), this Warrant authorizes the officers to whom it is directed to determine the locations of the cellular devices identified in Attachment A by collecting and examining:

1. radio signals emitted by the Target Cellular Devices for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the Target Cellular Devices in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).